**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number:  **21-02884-eg**

## ORDER

The relief set forth on the following pages, for a total of 26 pages including this page, is
hereby ORDERED.

---

**FILED BY THE COURT**
**12/06/2022**



Elisabetta G. M. Gasparini
US Bankruptcy Judge
District of South Carolina

Entered: 12/06/2022

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE:<br><br>Tiffany Marie Welch,<br><br>                     Debtor(s). | C/A No. 21-02884-EG<br><br>Chapter 13<br><br>**ORDER GRANTING IN PART AND DENYING IN PART REQUEST FOR ALLOWANCE OF FEES PURSUANT TO 11 U.S.C. §§ 330(a) & 503(b)(2)** |

**THIS MATTER** is before the Court for consideration of the allowance of attorney fees claimed pursuant to 11 U.S.C. § 330(a) and SC LBR 2016-1(b) to be paid through the Debtor's confirmed chapter 13 plan as an administrative expense pursuant to 11 U.S.C. § 503(b)(2). Jason Moss ("Moss") of Moss & Associates, Attorneys P.A. (the "Firm"), counsel for Tiffany Marie Welch ("Debtor") claims the fees through a Statement of Supplemental Chapter 13 Attorney Fees After Confirmation ("Supplemental Fee Statement") filed with the Court. Both the Chapter 13 Trustee ("Trustee") and the United States Trustee ("UST") filed objections. More specifically, Moss seeks the award of fees in the amount of $2,484.00, in addition to the Expedited Fee (as defined below) of $4,000.00, for services related to (i) seeking a moratorium of payments under the confirmed chapter 13 plan (the "Motion for Moratorium") and (ii) helping the Debtor apply for modification or forgiveness of her student loans beyond any relief available pursuant to 11 U.S.C. § 523(a)(8) or other provisions of the Bankruptcy Code or Rules through an online portal outside of the chapter 13 plan process.

The Court held an evidentiary hearing on this matter on November 3, 2022. Korey Williams ("Williams"), a recently hired bankruptcy legal assistant, and Chi Anne Walling ("Walling"), a bankruptcy paralegal, testified on behalf of the Firm. After consideration of the evidence admitted into the record, the testimony presented, the parties' arguments, and applicable

1

law, the Court enters the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a)(1).[1]  For the reasons stated below, the Court will allow only supplemental fees in the amount of $400.00 pursuant to 11 U.S.C. § 330(a)(4) and SC LBR 2016-1(b)(2) for services related to the Motion for Moratorium as administrative expense to be paid through the plan.

## **FINDINGS OF FACT**

### I.    BACKGROUND OF THE DEBTOR'S CASE

On January 12, 2017, the Debtor filed a Chapter 13 petition, initiating C/A No. 17-00160-DD.  The case was then converted to Chapter 7, and the Debtor received a discharge pursuant to 11 U.S.C. § 727.[2]  Accordingly, under 11 U.S.C. § 1328(f)(1), the Debtor is not eligible for another bankruptcy discharge until 2025.  On November 8, 2021 (the "Petition Date") —less than a month after her prior case was closed—the Debtor filed the current Chapter 13 case with the Firm's assistance.  The Debtor's schedules in the current case indicate she has one creditor with a claim for $7,500.00 secured by her vehicle and unsecured debts totaling $83,655.80, of which $80,097.00 are for the same student loans that were also not discharged in the prior case.[3]

On January 24, 2022, the Court entered an Order Confirming Chapter 13 Plan.[4]  The confirmed plan pays the value of the secured claim of the Debtor's only secured creditor, provides for monthly payments of $239.00 for two months followed by $245.00 for 58 months, and anticipates that unsecured creditors will receive less than a 100% distribution on their claims.[5]  The plan does not contain any specific provision addressing student loans.

---

[1] Made applicable to this contested matter by Fed. R. Bankr. P. 9014.
[2] C/A No. 17-00160-DD, ECF No. 47.
[3] ECF No. 17.  The Debtor's claims register reflects that claims in the total amount of $110,263.07, including $8,436.08 of secured debts, were filed.
[4] ECF No. 21.
[5] ECF No. 19 (Chapter 13 Plan) and ECF No. 20 (Chapter 13 Plan Payment Stipulation).

## II.  INITIAL DISCLOSURE OF COMPENSATION AND RETAINER AGREEMENT

The Debtor and the Firm entered into a retainer agreement (the "Retainer Agreement")

three days prior to the Petition Date, a copy of which accompanies the Disclosure of Compensation

of Attorney for Debtor (Form B2030) (the "Initial Disclosure of Compensation"), as required by

11 U.S.C. § 329 and Fed. R. Bankr. P. 2016(b).  According to the Initial Disclosure of

Compensation, the Firm agreed to charge the $4,000.00 fee set forth in the expedited fee approval

procedures found in SC LBR 2016-1(b), as supplemented by the Common Chambers Guidelines,

for a chapter 13 individual case (the "Expedited Fee"),[6] $286.00 of which was paid to the Firm

prior to the Petition Date, and the $3,714.00 balance remained to be paid through the confirmed

chapter 13 plan.  In exchange for the Expedited Fee, the Firm agreed to render legal service for

"all aspects of the bankruptcy case," including certain enumerated services.  The Initial Disclosure

of Compensation further stated:

> By agreement with the debtor(s), the above-disclosed fee does **not** include the
> following service: Representation of the debtors in any dischargeability actions,
> judicial lien avoidances, relief from stay actions, motions to incur debt, motions to
> sell property, ***moratoriums***, motions to reconsider, plan modifications after
> confirmation, motions to reopen, motions to redeem, or any other adversary
> proceeding.

ECF No. 1 at p. 12 (emphasis added).  Services in connection with student loans were not expressly

excluded in the Initial Disclosure of Compensation.

The Retainer Agreement attached to the Initial Disclosure of Compensation sets forth in

more detail the services to be provided and those excluded from the Expedited Fee and states, in

pertinent part:

> [The Firm] agrees that, in exchange for payment of the above specified fees, [the
> Firm] shall perform **all** services associated with the bankruptcy matter **except for
> those specifically listed on Schedule A, attached hereto**.  If additional fees are
> incurred as specified in Schedule A, Client shall be responsible for such fees.

---

[6] *See infra* at pp. 15-18.

3

However, Client acknowledges that [the Firm] may be able to file a supplemental claim with the bankruptcy court, which would allow payment out of assets of the estate or Chapter 13 plan payments. . . . The parties further agree that all fees paid under this agreement are non-refundable and earned immediately by [the Firm] except as set out in the Termination clause below.

ECF No. 1 at p. 14 (emphasis added).

Schedule A attached to the Retainer Agreement lists 15 services excluded from the Expedited Fee.  It does not specify the fees that would be charged for such services, but states that "[s]pecific fees will vary, as amounts approved by the different trustees may be inconsistent and/or may change over the life of your bankruptcy."  Legal services related to student loan assistance and motions for moratorium are not specifically listed on Schedule A; however, the list includes "Resolving or Defending Post-Confirmation Petition to Dismiss by Trustee" as an excluded service.  Schedule A also states that "[t]his list is not exclusive, as there may be other types of services that arise, which are not contemplated by the original retainer agreement."

Also attached to the Retainer Agreement is a Disclosure of Additional Attorney's Fees ("Initial Additional Fees Disclosure").  While it does not indicate how it relates to (or whether it controls over) Schedule A, it provides an extensive list of 43 services and their related fees and states that "[t]hese fees are in addition to expedited attorney fees as referenced in the signed attorney client agreement."  "Motion for Moratorium" is listed on the Initial Additional Fee Disclosure as an excluded service with a supplemental attorney's fee of $885.00, and "Resolve Petition to Dismiss by Trustee" is also listed for a supplemental fee of $350.00.  Services related to student loan assistance, however, are not included on the list of excluded services.

The Initial Additional Fees Disclosure further provides that if the Debtor has "an issue that requires legal work greater than the above-referenced amounts, a request for approval of additional fees will be submitted to the Bankruptcy Trustee and Bankruptcy Court," with attorney services

4

being charged at $500.00 per hour or, if a contingency agreement is employed, such services would

be paid at 40%.

### III.    WORK PERFORMED IN DEBTOR'S CASE

#### a.    *Motion for Moratorium*

On July 14, 2022, the Trustee filed a Petition to Dismiss, requesting dismissal of the case

if the Debtor did not cure a $490.00 arrearage in plan payments.[7]  At the hearing, Walling testified

she contacted the Debtor regarding the Petition to Dismiss to setup an appointment between her

and Moss.  After that consultation, the Debtor signed an informal settlement agreement that had

been prepared by the Trustee to resolve the Petition to Dismiss.  The Trustee subsequently

requested, and, on August 8, 2022, the Court entered a form order denying the Trustee's Petition

to Dismiss based upon the settlement agreement reached between the Debtor and the Trustee.[8]

The Debtor then met with Moss and decided to seek a two-month moratorium (and thus a deferral

of $490.00 of her plan payments).  On August 19, 2022, the Debtor filed the Motion for

Moratorium on a standard form the Firm uses for such motions along with an attached form Notice

of Motion and a proposed order.[9]

Walling testified that around two hours of work—between her and Moss—were spent

performing services in connection with the Motion for Moratorium, though she did not know the

exact time they respectively spent on the task.  The Firm does not keep time records given their

use of the expedited fee procedure and the volume of cases they handle; as Walling stated, "[they]

would not be able to serve [their] clients" if they did.  The services related to the Motion for

Moratorium included (i) reviewing the Petition to Dismiss; (ii) contacting the Debtor in reference

---

[7] ECF No. 23.
[8] ECF No. 24.
[9] ECF No. 26.

to the past due amounts; (iii) reviewing the form order denying the Petition to Dismiss; (iv) changing the case caption and hearing information on the form Notice of Motion for Moratorium; (v) reviewing information on the Trustee's network to determine the amount of the Debtor's plan arrearage to determine how many months of moratorium were needed; (vi) changing the case caption, the reason for the moratorium, the length of the moratorium, and the payment resumption date on the motion; and (vii) filing and serving the notice and motion.  Further, Walling stated there were costs incurred in retrieving documents from Public Access to Court Electronic Records (PACER) and in serving the Motion on the 27 parties on the mailing matrix, though she did not know how much was charged per page for copies.

Walling agreed it is the Trustee's practice to generally consent to the first motion in a case seeking a moratorium of plan payments of three months or less, as was the case here.  As no objections to the Motion were filed, the Court entered the proposed order filed by the Trustee granting the moratorium without a hearing.[10]

### b.    *Student Loan Assistance*

The Firm also performed services for the Debtor following confirmation of her plan to address her non-discharged student loans through an online portal operated by an outside vendor. Moss acknowledged at the hearing and in pleadings that, for the Firm, this type of work is in its "infancy" stages and that some of its features are still being developed.[11]  The Firm began to offer such services, which it refers to as the "Student Loanify Program," in the first or second quarter of 2022.  Williams testified that there are two options available: (1) the attorney-assisted option offered by the Firm; and (2) an option for the client to use a portal on their own for $100.00, which the Firm informs the client about "if they ask."  If a client decides to participate in such program

---

[10] ECF No. 32, entered Sept. 15, 2022.
[11] ECF No. 40.

with the Firm's assistance, the Firm gives the client a questionnaire designed to elicit the information required to be input into the portal, sets up an account for the client and provides the client with a secure link to access the portal, gathers documents from the client, downloads information from the United States Department of Education's ("DOE") database to determine what type of student loans the client has, and enters information into the portal.

Williams admitted that some of the information requested on the questionnaire is similar —if not the same—as what is requested of a bankruptcy client in preparing the initial schedules and statements of financial affairs; however, some of the information is more specific. The information regarding a debtor's student loans, according to Williams, is available on the DOE's website (*i.e.*, studentaid.gov) and can be accessed by the client for free. The Firm compares the information provided in the questionnaire against the information available on the federal website, and then uploads the relevant information. The portal then generates a report based on that information that includes consolidation, repayment, and forgiveness options available to the client and suggests which option may be the best. The Firm then reviews the options generated, notes any details unaccounted for by the portal in determining the best option, consults with the client about which option is in their best interest, and then helps with negotiations with the servicer. From the testimony, it was not clear how much work was performed and advice given by a paralegal as opposed to an attorney at the Firm. Moss acknowledged that nothing in the Bankruptcy Code mandates that student loans be addressed in this manner, and both Moss and Williams stated that similar assistance with student loans could be pursued and performed separate from the bankruptcy case or without the need to commence a bankruptcy case.

The timing of the student loan assistance in this case is nebulous. The Firm indicated that "[d]ue to the program being in its infancy, the timeframe for the process is developing but will be

undertaken from the time of agreement until conclusion of the program which will arise closer to the end of the Debtor's bankruptcy case."[12]  Moss indicated that when helping clients, the Firm's services start "immediately" after it has the required information from the client regarding student loans.      In this case, the Debtor reached out to the Firm on August 9, 2022—nine months after the Petition Date and approximately five months after confirmation—to inquire about what could be done to address her student loans, which were still owed despite her second bankruptcy filing. It was not until then that the Firm recommended she utilize their student loan services.  On August 11, 2022, non-attorney employees of the Firm began compiling documents and retrieving loan information from the DOE's website for the Debtor.  Williams then reviewed the questionnaire that the Debtor filled out, input information from the questionnaire into the portal, and analyzed the Debtor's student loans.  From that process, Williams determined the Debtor would not be a good candidate for an income-driven repayment program; however, because the Debtor's source of income is primarily Social Security due to a disability, Williams determined the Debtor may be eligible for an "administrative/disability discharge" of her student loans from the DOE (*i.e.*, her loans would be forgiven due to her inability to be employed and make payments given her disability).  When questioned why the Firm did not consider the Debtor's eligibility for an administrative discharge based on her disability for her considerable student loans at the beginning of her case, Williams stated that the Debtor's eligibility could fall "through the cracks" until the Firm is engaged to perform student loan assistance through the program.  Williams testified that the Firm has sent in the paperwork to the servicer to seek the administrative discharge of the Debtor's student loans and is waiting for a response.  Williams further testified that the Firm may

---

[12] ECF No. 40 (Joint Statement of Dispute).

have follow-up work to do depending on the servicer's response to the Debtor's request for the "administrative/disability discharge."

## IV.    APPLICATION FOR SUPPLEMENTAL FEES

On August 21, 2022, Moss filed the Supplemental Fee Statement pursuant to the expedited fee approval procedure set forth in SC LBR 2016-1, requesting a total of $2,484.00 for services described only as "Student Loanify (8.15.22) and Motion for Moratorium (8.19.22)." The Supplemental Fee Statement clarified that "[t]hese fees are added to any prior amount charged."

On September 2, 2022, following the Trustee's objection to the Supplemental Fee Statement, Moss filed an Amended Disclosure of Compensation of Attorney for Debtor (the "Amended Disclosure of Compensation").[13] The Amended Disclosure of Compensation, dated August 11, 2022, increases the total amount to be paid to Moss for services rendered on behalf of the Debtor from the Expedited Fee of $4,000.00 to $6,484.00, to reflect the supplemental fees, leaving a balance of $6,198.00 due after deduction of the $286.00 already paid. The Amended Disclosure of Compensation has attached to it an Amended Additional Fees Disclosure as well as a "Student Loanify Terms of Service." The Amended Additional Fees Disclosure lists the same services for which supplemental fees would be sought as the Initial Additional Fees Disclosure (including motions for moratoriums to be billed at a fee of $885.00) and adds four additional services, including services related to work titled "Student Loanify," with an additional fee of $1,599.00.[14] The hourly rate for attorney work for "an issue that requires legal work greater than the above-referenced amounts" was increased from $500.00 to $550.00.

---

[13] ECF No. 29.
[14] According to testimony provided at the hearing, the $1,599.00 fee includes a filing fee of $120.00 that is paid to an outside vendor for the use of the portal, and the remaining $1,479.00 is for services rendered by the Firm.

The Student Loanify Terms of Service attached to the Amended Disclosure of Compensation states:

> [The Firm] and the undersigned client agree to the following terms regarding the Student Loanify program.  Subject to the terms of the agreement, [the Firm] shall prepare and engage in the Student Loanify program for said client(s) **at the end of the Chapter 13 Bankruptcy or after completion of the case**.  Client must furnish necessary information by completing our Student Loanify questionnaire, or through the Portal.  The information will be combined with all available qualifying student loans discovered through studentaid.gov to create the best available repayment options and determine forgiveness after processing through our portal.  **The cost of Student Loanify will be built inside the confirmed Chapter 13 Plan as an unsecured priority creditor at $1,599.  Student Loanify is non-refundable and applies only to the present case.**  If client is currently in a Chapter 13 Bankruptcy, [the Firm] may file a supplemental proof of claim for the cost associated with Student Loanify as an unsecured priority creditor.[15]

The Terms of Service has a signature for an undefined "Client" dated September 2, 2022.

Williams testified that, despite the Terms of Service stating the Firm will not "prepare and engage in the Student Loanify program" for the Debtor until "the end of the Chapter 13 Bankruptcy, or after the completion of the case," the "footwork" for the process is done as soon as the Firm receives the necessary documentation and loan information from the Debtor.  Moreover, Walling acknowledged that if the Debtor receives an "administrative/disability discharge" of her student loans, a motion to modify plan and amended plan or objections to claims would have to be filed because the Debtor's student loans are currently part of the pool of unsecured creditors paid pursuant to the plan.  Such filings would cause additional attorney fees to be incurred.[16]

As for the Motion for Moratorium, Walling testified the fees for that service include contacting the Debtor regarding the Trustee's Petition to Dismiss, resolving the Petition to Dismiss, the Debtor's consultation with Moss, and the services and costs directly related to the

---

[15] ECF No. 29 (emphasis added).
[16] Charges for such services are also itemized separately in the Amended Additional Fees Disclosure should they become necessary in the bankruptcy case, regardless of any connection to student loan assistance.

Motion for Moratorium noted above.  The Supplemental Fee Statement requesting $850.00 for the

Motion for Moratorium was filed only two days after the Motion was filed—a month before the

hearing was scheduled by passive notice, and prior to the passing of the deadline to object; thus, it

was filed before the full scope of necessary work was evident.

## CONCLUSIONS OF LAW

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.  This

matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and this Court may enter a final

order.

### I.    APPLICABLE LAW

### a.    *Attorney's Duty to Disclose Compensation*

Section 329(a) provides:

> Any attorney representing a debtor **in a case under this title, or in connection with such a case,** whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered **in contemplation of or in connection with the case by such attorney**, and the source of such compensation.

11 U.S.C. § 329(a) (emphasis added); *see also* Fed. R. Bankr. P. 2016(b) and 2017.[17]  "Attorneys

representing debtors in bankruptcy cases have an affirmative duty to disclose all fee arrangements

and all payments fully and completely."  *In re Green*, C/A No. 20-03190-HB, 2021 WL 5177427,

at *11 (Bankr. D.S.C. Nov. 3, 2021) (citing § 329(a); Fed. R. Bankr. P. 2016(b)).  "An attorney's

duty to make an accurate disclosure of fees is as significant as debtors' duty to disclose their assets

and liabilities.  Such disclosures are important in that they enable the Court, trustees, and other

---

[17] Rule 2016(b) further provides:
> Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States Trustee within 14 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity.

parties to review the reasonableness of fees and debtors' transactions with their attorneys." *In re Walker*, C/A No. 01-11884-W, slip op. at 7 (Bankr. D.S.C. Feb. 27, 2002).   If the compensation exceeds the reasonable value of services provided, the Court may cancel the retainer agreement or order the return of payment, to the extent excessive, to the estate or the entity that made the payment.  11 U.S.C. § 329(b).

**b.**    ***Allowance of Reasonable Compensation in Connection with the Bankruptcy Case as an Administrative Priority Claim***

Section 330(a)(1) of the Bankruptcy Code empowers the Court to award to debtor's counsel "reasonable compensation for actual, necessary services rendered by the . . . attorney and by any paraprofessional person employed by [the attorney]" and "reimbursement for actual, necessary expenses."  More specifically,

> In a . . . chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor **in connection with the bankruptcy case** based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

11 U.S.C. § 330(a)(4)(B). The Court may not award compensation for unnecessary duplication of services or services that were not reasonably likely to benefit the debtor's estate or necessary to the administration of the case.  11 U.S.C. § 330(a)(4)(A).  Thus, "[t]he court may, on its own motion or on the motion of the United States Trustee, the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested."  11 U.S.C. § 330(a)(2).

In determining the amount of reasonable compensation to be awarded to a debtor's counsel, section 330(a)(3) states that the Court shall consider:

> [T]he nature, the extent, and the value of such services, taking into account all relevant factors, including—
> (A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3). The Fourth Circuit has held that courts must consider various factors including, among others, "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; . . . (5) the customary fee for like work; . . . (8) the amount in controversy and the results obtained; . . . and (12) attorneys' fees awards in similar cases." *In re Larson*, 346 B.R. 693, 701-02 (Bankr. E.D. Va. 2006) (quoting *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978)).

In determining what constitutes reasonable compensation, the Court may rely on its own expertise regarding reasonable compensation and review fees charged by and awarded to other attorneys who represent debtors in chapter 13 cases in this District. *In re Botero-Paramo*, 483 F. App'x 779, 788-89 (4th Cir. 2012) ("[B]ecause nearly every case on a bankruptcy court's docket involves reviewing attorneys' fees and costs in the community, we find that bankruptcy courts are, in certain circumstances, particularly qualified to determine the reasonableness of fees based on their own expertise"); *In re Smith*, 624 B.R. 781, 796-97 (Bankr. D.S.C. 2021) (noting that "[w]hile the Court has not received evidence of fees of comparable work, this Court is familiar with the customary rates charged by attorneys in both chapter 13 and chapter 11 cases"); *see also In re Metts*, 642 B.R. 424, 427 (Bankr. D.S.C. 2022).

13

If awarded, these fees may be paid as administrative priority claims pursuant to 11 U.S.C.
§ 503(b)(2)[18] and be allowed priority over other unsecured creditors as set forth in 11 U.S.C.
§507(a)(2) (granting § 330 claims priority after certain domestic support obligations and
administrative expenses of a trustee).

### c.    *Expedited Fee Approval Procedure*

A professional must ordinarily file a formal fee application detailing the services provided,
the time expended, and the expenses incurred. *See* Fed. R. Bankr. P. 2016(a). In chapter 13 cases,
to streamline and simplify the practice given the volume of cases filed and the fact that chapter 13
consumer cases tend to require a predictable amount of work, many districts provide a simplified
procedure through their local rules, commonly known as an expedited or "no-look fee" process,
for approval of fees that do not exceed a specified amount without the need to maintain
contemporaneous time records or file a fee application. The rationale supporting the expedited fee
procedure in chapter 13 cases has been articulated as follows:

> The use of a "no look" fee prevents the development of a cottage industry of filing
> and ruling on fee applications. It provides certainty to debtors as to the amount that
> they will pay and to the attorney as to the amount that he or she should receive. It
> allows the chapter 13 trustee to calculate plan payments knowing what the fee will
> usually be without the need to constantly adjust the payment to account for
> additional fees. It allows unsecured creditors to know what percentage they will be
> receiving on their claims, since any amount paid as attorney's fees usually reduces
> the amount to unsecured creditors.

*In re Spurlock*, 642 B.R. 269, 287 (Bankr. S.D. Ohio 2022). Just as attorneys are not restricted to
the expedited fee process and can seek additional fees if warranted, the expedited fee structure
allows a range of flat fees up to a maximum for basic bankruptcy services which are presumed

---

[18] 11 U.S.C. § 503(b)(2) provides that, "[a]fter notice and a hearing, there shall be allowed administrative expenses . .
. including . . . compensation and reimbursement awarded under section 330(a) of this title[.]"

reasonable, but the presumption "may be overcome if the services provided in a case do not appear to justify the requested fee." *Id.* at 291; *Smith*, 624 B.R. at 791.

In this District, SC LBR 2016-1 sets forth the simplified procedure for debtor's counsel to be compensated in Chapter 13 cases. *See Smith*, 624 B.R. at 790-91. As an alternative to the sometimes-burdensome process of filing a formal fee application, debtor's counsel may utilize the expedited fee procedure, whereby counsel may obtain approval of compensation for services rendered through the conclusion of a typical bankruptcy case without the need for filing a formal fee application and a hearing. While this Court has not expressly enumerated by local rule or operating order what services are required by debtor's counsel in a typical chapter 13 case, it generally includes representation for the entire bankruptcy case except for appeals, adversary proceedings, or unexpected circumstances most often resulting from a default under a confirmed plan. *Id.* at 792 ("In other words, the [Expedited Fee] represents a presumptively reasonable fee for services in a debtor's chapter 13 case from the petition to the discharge as long as no unforeseen circumstances arise."). "The greatest portion of an attorney's services covered by the [Expedited Fee] are expected to occur prior to the confirmation of a plan" because "[o]nce a plan is confirmed, it becomes binding on all parties and usually does not need to be modified as long as the debtor performs and is making timely payments under the plan." *Id.* The Judges of this Court periodically review and consider what constitutes a reasonable Expedited Fee and set forth the amount in the Judges' Common Chambers Guidelines. Currently, the Expedited Fee is set at $4,000.00 for consumer cases and $4,500.00 for business cases.[19]

---

[19] *See* Common Chambers Guidelines, "Chapter 13 Procedures" at p. 5. SC LBR 2016-1(b)(1) further provides:

**Unless the Court orders otherwise, the Expedited Fee Amount is deemed an allowed administrative claim under 11 U.S.C. § 503(b)(2)**. The amount may be claimed by the attorney's filing of the Attorney Fee Disclosure Statement pursuant to Fed. R. Bankr. P. 2016(b) (Director's Bankruptcy Form B2030). The B2030 Form shall clearly indicate the fee agreed upon, the amount

SC LBR 2016-1(b)(2) provides the procedure for obtaining supplemental fees:

**(b) (2) Statement of Supplemental Fees**. Any supplemental compensation must be disclosed, whether that amount will be paid through disbursements by the Trustee or paid directly by the debtor(s).  If expressly authorized by a conspicuous provision of a written fee agreement filed with the B2030 Form, the debtor(s) and attorney may agree to the attorney's supplemental compensation **for additional work necessary as a result of any matters involving the default under or variance from the terms of the confirmed plan, adversary proceedings, appeals, or other complicating factors not present in the typical chapter 13 case**.  A supplemental fee may be asserted by utilizing the "Statement of Supplemental Chapter 13 Attorney Fees" event in CM/ECF ("Statement").  The description of services provided in the Statement associated with the request shall contain sufficient information to determine whether the supplemental fee charged is fair and reasonable.  The Statement may be used for the disclosure of any supplemental compensation that will be paid through disbursements by the Trustee or paid directly by the debtor(s).  The filing of a Statement may be used in lieu of filing an additional or amended B2030 Form.

. . .

B. **After Confirmation**. The Statement must be filed within a reasonable time **after completion of the additional services** and notice of the supplemental fee must be provided to the debtor(s) and the chapter 13 trustee.  Unless an objection to the Statement is filed within fourteen (14) days of service or unless the Court orders otherwise, the supplemental fee shall be approved for disbursement by the Trustee or, if the fee has been or will be paid directly by the debtor(s), shall be approved as direct payment by the debtor(s) subject to the terms of the confirmed plan and these Rules.

SC LBR 2016-1(b)(2).[20]   The Local Rule is clear that "[a]ll supplemental fees approved for disbursement . . . remain subject to the Court's consideration of the fee under 11 U.S.C. § 329(b) at any time prior to the closing of the case." *Id.*  Usually, supplemental fees "are for services provided post-confirmation and associated with either the debtor's failure to comply with the plan or an unforeseeable event," including defending a trustee's petition to dismiss and motions for

---

paid to date, and the amount to be paid through the chapter 13 plan, and shall define any charges or potential charges for supplemental fees described in paragraph (b)(2). Counsel must include as an attachment to the B2030 Form, a copy of counsel's signed representation agreement with the debtor(s).

SC LBR 2016-1(b)(1) (emphasis added). Often, the bulk of these fees are paid through the chapter 13 plan; therefore, whether an attorney receives payment of this fee is contingent upon debtor's success in making payments under the plan.

[20] The CM/ECF Statement of Supplemental Chapter 13 Attorney Fees places fee information in a conspicuous and easily accessible entry on the case docket, promoting transparency, consistency, and clarity.

moratoriums. *Smith*, 624 B.R. at 793. Attorneys often include a "menu-like" list in their fee agreements, including amounts to be charged for each type of service, and the trustees generally will not object to the request for the supplemental fee if the amounts are equal to or less than the amount usually approved for such services. *Id.* The supplemental fees, however, would still be subject to review by the Court under the standards of 11 U.S.C. §§ 329 and 330. *See In re Robinson*, 368 B.R. 492, 499 (Bankr. E.D. Va. 2007) (reducing amount of supplemental fees sought for litigating confirmation objections and motion to dismiss, as well as for miscellaneous post-confirmation matters because of counsel's "learning curve" and on account of the lack of clarity in the contract for legal services regarding the possibility that debtor would be billed additional amounts).

As recognized in the Local Rule and provided by applicable law, attorneys may seek compensation by charging an hourly rate and submitting a formal application for compensation instead of utilizing the Expedited Fee and supplemental fees. *See* SC LBR 2016-1(b)(3); *Smith*, 624 B.R. at 791 ("SC LBR 2016-1(b)(3), by its plain language ('in lieu of'), provides hourly billing as an alternative to the procedures provided by SC LBR 2016-1(b)(1) & (2)."); *Metts*, 642 B.R. at 428 ("SC LBR 2016-1(b)(3) also provides hourly billing as an alternative to the procedures provided by SC LBR 2016-1(b)(1) and (2), requiring more of the attorney."). Here, however, the fees the Firm seeks fall within the Expedited Fee approval procedure of SC LBR 2016-1(b)(1) and (2).

## II.    DISCUSSION

From the outset, the Court notes that in a chapter 13 case in which the debtor is an individual—such as this—11 U.S.C. § 330(a)(4)(B) provides that a bankruptcy court may award the debtor's attorney reasonable fees for representing the debtor "*in connection with the*

*bankruptcy case*".  *See also* 11 U.S.C. § 329 (setting forth requirements of "any attorney representing a debtor *in a case under this title, or in connection with such a case*" to file a statement of compensation paid or to be paid "*for services rendered or to be rendered in contemplation of or in connection with the case* by such attorney").  If the fees at issue are "in connection with the bankruptcy case," then SC LBR 2016-1(b) provides an expedited procedure for asserting fees and requesting payment through the chapter 13 plan as an administrative priority claim, typically reducing disbursements to other creditors.  The Firm has utilized that procedure, so the analysis starts with that rule.

To utilize the procedure found in SC LBR 2016-1(b), as set forth above, supplemental fees in addition to the Expedited Fee can be awarded if certain factors are met, which can be summarized as follows:  (1) the fees must be for "additional work necessary as a result of any matters involving the default under or variance from the terms of the confirmed plan, adversary proceedings, appeals, or other complicating factors not present in the typical chapter 13 case"; (2) the statement must be filed within "a reasonable time after completion of the additional services"; (3) the supplemental fees must be "authorized by a conspicuous provision of a written fee agreement filed with the B2030 Form"; and (4) the description of services provided in the Supplemental Fee Statement must contain sufficient information to determine whether the supplemental fee charged is fair and reasonable.  *See* LBR 2016-1(b).

In applying this analysis to the Supplemental Fee Statement before it, the Court cannot overlook the context in which the issue arises.  The Debtor has already agreed to pay the Firm the Expedited Fee of $4,000.00 to represent her in the bankruptcy case.  The Debtor commenced this second bankruptcy filing with $110,263.07 in debt, including $8,436.08 in secured debt (which the confirmed plan valued for $7,275.00), and the majority being student loan debts that she owed

18

even before filing her first bankruptcy case.  The rest of her debts, however, will remain unaffected by the bankruptcy, either because they are non-dischargeable student loan debts or general unsecured debts which cannot be discharged because of the Debtor's prior bankruptcy discharge. The confirmed plan contemplates payments over a 60-month period totaling $14,688.00.  If the supplemental fees were awarded in full, a total of $6,198.00—over 40% of the payments made under the plan—would be distributed to the Firm—thus reducing distributions to unsecured creditors.  As the Trustee stated at the hearing, however, awarding the supplemental fees in full would render the current plan unfeasible, and the Debtor's payments would have to increase by approximately $45 to $50 per month (*i.e.*, an increase of 18-20%) because the current plan payments are insufficient to fund them.  Such an increase in plan funding would most likely require the filing of a modified plan, which, in turn, may require the Debtor to incur even further legal fees.[21]  This does not appear feasible for the Debtor, as she has already struggled to make the current plan payment.

Against this backdrop and for the reasons set forth below, the Court will reduce the fees for the Motion for Moratorium and decline to approve the remainder as an administrative priority claim.

### a.    *Fees Related to the Motion for Moratorium*

The Firm seeks supplemental fees of $885.00 in connection with the Motion for Moratorium.  There is no dispute as to the first factor of SC LBR 2016-1 that the supplemental fee involves services resulting from "the default under or variance from the terms of the confirmed plan".  As to the second factor, the Supplemental Fee Statement was filed prematurely.  Just two days after filing the Motion for Moratorium, and before the objection deadline even passed, Moss

---

[21] According to the Additional Fees Disclosure, motions to modify a post-confirmation plan are charged at $885.00.

filed the Supplemental Fee Statement without knowledge of the scope of work necessary to complete this task.  Ultimately, the task proved simple and the time commitment minimal.  The Court is best positioned to determine the reasonableness of fees when the scope of the required services is evident, and the work for which the fees are being charged has been completed.

The Trustee and the UST argue that the third and fourth factors are not met.  More specifically, they argue that the Retainer Agreement and its attachments did not "conspicuously" exclude motions for moratoriums as required by SC LBR 2016-1(b)(2).  After a review of the several agreements that make up the information provided to the Debtor with respect to the Firm's engagement, the Court shares some of the concerns raised by the UST and the Trustee.[22]  However, while the Court acknowledges that the Retainer Agreement and related documents could have been clearer and encourages the Firm to review its template engagement letter for future purposes, the Court concludes that the Retainer Agreement provided adequate notice to the Debtor that motions for moratoriums were not covered by the Expedited Fee.

As to the last factor, the Court concludes that $885.00 is excessive for such services under the facts of this case.  The Court routinely reviews fee applications by debtors' counsel, including supplemental fee statements filed by attorneys in chapter 13 cases.  The Court has not been able to find any case, and none has been brought to its attention, where fees greater than $500.00 have been awarded for a routine motion for moratorium.[23]  To be clear, $500.00 may not always be

---

[22] The UST raised various concerns that the contract between the Debtor and the Firm did not "clearly and conspicuously" explain the services that the Firm would provide in the bankruptcy case for the Expedited Fee, thus calling into question compliance with 11 U.S.C. § 526(a)(1)-(3) and § 528(a)(1).  Neither the UST nor the Trustee, however, have requested that the Court void the contract under 11 U.S.C. § 526(c)(1), and the Court will not do so in this case given the conclusions already reached.

[23] In closing arguments, Moss pointed the Court to a couple of cases where the attorneys' retainer agreements set the rate of supplemental fees for moratoriums at $750.00-$1,000.00.  The Court, however, notes that these fees are simply listed in the schedule of fees for additional services excluded from the Expedited Fee; those fees were not sought or awarded in those cases.

reasonable for services related to a routine motion for moratorium, and there may be circumstances where debtor's counsel is entitled to more.

Here, as the testimony indicates, the Firm prepared the Motion for Moratorium[24] after determining the amount of the plan arrearages and the number of months for which a moratorium was sought and used a standard form which only required changing the caption, the reason for and the length of the moratorium, and the payment resumption date.  The motion was then served on the creditor matrix which consists of approximately 27 parties.  Assuming the costs involved with the copying and mailing range between $1.00 to $1.25 per noticed party, the Court estimates that the cost involved with the Motion for Moratorium would not exceed $35.00.

As expected, because this was the first request for moratorium and the length of the moratorium sought was two months, neither the Trustee nor any other party in interest objected, and a form order filed by the Trustee was entered by the Court.  While it is not clear from the evidence before the Court how much paralegal time was spent versus the amount of time that Moss spent to consult with the Debtor, the Firm estimates that, overall, at least two hours of work was spent on this service and most of it was performed by his paralegal.

The supplemental fee is also not justified when considering the amount in controversy and the result obtained. While there may have been other benefits to avoid the dismissal of the case, an award of $885.00 for services for a moratorium is not commensurate to the value of the services rendered or the result obtained, considering the fact that the deferral sought was only for payments totaling $490.  In this case, had the attorney paused to review the work that was necessary and the

---

[24] It is not clear why the Firm negotiated a settlement of the Trustee's Petition to Dismiss and then filed the Motion for Moratorium thereafter.  It appears that either the settlement or the moratorium would alone be sufficient to resolve the Petition to Dismiss, and that negotiating a settlement *and* filing the Motion for Moratorium represents an unnecessary duplication of services under § 330(a)(4)(A).  Accordingly, even though the fee request for the Motion for Moratorium included services regarding resolving the Petition to Dismiss, the Court will evaluate the fee request for reasonableness only in reference to the services performed in obtaining the moratorium.

results obtained, he likely would have concluded that the $885.00 charged was excessive on these facts, when taking into account the standards of 11 U.S.C. §§ 329 and 330.  Accordingly, under the facts and record before it, the Court will allow supplemental fees for the Motion for Moratorium in the amount of $400.00. [25]

> **b.**      ***Fees for Student Loan Assistance***

The Firm also seeks supplemental fees of $1,599.00 for providing student loan assistance. Student loan debts, as set forth in 11 U.S.C. § 523(a)(8), are generally non-dischargeable unless discharge for undue hardship is litigated by the Debtor in the bankruptcy case or conceded by the creditor.  As acknowledged by the Firm, nothing in the Bankruptcy Code requires student loan debt to be specifically addressed in a chapter 13 plan;  anyone can seek assistance with student loans without commencing a bankruptcy case or even while their bankruptcy case is still pending. Similar to representing a debtor in family court in connection with a divorce, defending a debtor in a tort action in another court, or drafting a will for a debtor while also representing her in a bankruptcy case, the services as described here may be beneficial to the Debtor, but they are not necessarily provided "in connection with the bankruptcy case;" and they do not clearly fall within the expedited procedure of SC LBR 2016-1(b).  Similarly, the fee disclosures and review required under § 329 is usually not required for attorneys who represent the debtor on a standard contingency basis in tort matters (*i.e.*, personal or property injury cases), who provide services to the debtor that fall within the domestic support obligation exceptions to the automatic stay or domestic matters for which relief from stay has been granted, or who represent the debtor in

---

[25] The hourly rate for Moss or his paralegals as quoted in the Retainer Agreement is not *per se* at issue, as the Court is not considering the fee under a lodestar analysis, whereby the hourly rate is multiplied by the time spent.  However, the Court cannot overlook the fact that the hourly fee that Moss quotes in the Firm's Retainer Agreement of $550.00 per hour appears excessive when considering customary hourly rates charged in chapter 13 as well as chapter 11 cases.

criminal matters.  To be clear, that does not mean that the attorney cannot be compensated for such services while also representing the debtor in a bankruptcy case.  While the attorney is certainly entitled to be paid for such services according to any valid underlying contract, the Bankruptcy Code does not provide that such fees are allowed administrative priority status to be paid through the chapter 13 plan as is requested here.

The Firm has drawn the Court's attention to procedures adopted in some districts around the country, such as the U.S. Bankruptcy Court for the Middle District of Florida[26] and the U.S. Bankruptcy Court for the Southern District of Florida[27] that by court order tie student loan assistance to chapter 13 plans and provide for associated compensation.  No such program has been adopted in this District.  During arguments, Moss also drew an analogy between these charges and the supplemental fees that are sometimes awarded to be paid through the chapter 13 plan for services related to a loss mitigation/mortgage modification ("LM/MM").  The current Judges in this District have not mandated LM/MM procedures in every case;[28] however, debtors may voluntarily participate in the process and, when they do, the Court has streamlined procedures to grant stay relief to allow parties to undertake negotiations to attempt modification of the mortgage, confirmed plan provisions involving loan modification efforts, and entered orders that alter the plan thereafter or settlement orders that settle disputes through loan modification.  In such cases,

---

[26] Administrative Order FLMB-2022-1 ("*Administrative Order Prescribing Procedures for Student Loan Management Program in all Bankruptcy Cases Effective February 2, 2022*") (Bankr. M.D. Fla. Feb. 2, 2022), at https://pacer.flmb.uscourts.gov/administrativeorders/DataFileOrder.asp?FileID=103.

[27] Administrative Order 2021-02 ("*Adoption of Student Loan Program for Debtors in Chapter 13 Cases*") (Bankr. S.D. Fla. Mar. 30, 2021), at https://www.flsb.uscourts.gov/sites/flsb/files/documents/general-orders/AO_2021-02_Adoption_of_Student_Loan_Program_for_Debtors_in_Chapter_13_Cases.pdf.

[28] The previous judge assigned to this case had established mandatory LM/MM guidelines through an administrative order that delineated a clear procedure intended to facilitate LM/MM opportunities during the bankruptcy case.  Under those procedures, a supplemental $1,700.00 expedited fee would be allowed for consumer cases to be paid either directly by the debtor from post-petition income or from exempt assets or through the confirmed plan.  As set forth in the procedures, the fee was to provide "additional compensation for all services through the completion of the LM/MM process" including filing all the required notices and motions, assembling the information to upload on the portal, filing other required pleadings and proposed orders, communicating with the mortgage creditors, appearing at hearings relating to the LM/MM procedure, and participating in mediation.

23

reasonable and supported fees sought for such services are sometimes claimed through the expedited supplemental procedures and paid through the plan without objection.  Fees for that work are properly claimed in this manner when the work is completed and the outcome of the services is transparent and evident through the pleadings, motions, and/or consent orders filed on the docket.

In contrast, student loans fall within the general unsecured creditor class of the Bankruptcy Code.  The Code provides certain relief for student loans that cause undue hardship on the debtor or the debtor's dependents through 11 U.S.C. § 523(a)(8) and Fed. R. Bankr. P. 7001.  That relief is intricately connected to the bankruptcy case and normally occurs through the commencement of an adversary proceeding.  Fees for prosecuting such an action are compensable under the procedures found in SC LBR 2016-1, subject to review under the applicable standards set forth above.  In contrast, services provided to debtors regarding their non-dischargeable student loans and concerning relief of such debt available from non-bankruptcy sources, the consequences of which do not directly impact a debtor's obligations under a confirmed plan, is not work sufficiently connected to the bankruptcy case to warrant compensation under 11 U.S.C. § 330(a) and does not fit squarely within the existing expedited fee procedure of SC LBR 2016-1(b).[29]  Therefore, the fees are not subject to payment pursuant to 11 U.S.C. § 503(b).

To be clear, attorneys are expected to counsel their clients regarding general unsecured debts and to explore and explain any options to assert a discharge of debt through an adversary proceeding, if applicable, or by other means.  If, based on the facts of the case, additional work related to student loan assistance is determined to be necessary "for representing the interests of the debtor in connection with the bankruptcy case" and it is "necessary as a result of any matters

---

[29] Even if they were deemed to be in connection with the case, the Supplemental Fee Statement falls short of the requirements of SC LBR 2016-1(b)(2), as it does not appear that all factors as set forth above have been met.

involving the default under or variance from the terms of the confirmed plan, adversary proceedings, appeals, or other complicating factors not present in the typical chapter 13 case," fees may be claimed pursuant to SC LBR 2016-1(b). However, such fees are always subject to review under the standards discussed herein. The record does not support a finding that the fees claimed here for student loan assistance are for services sufficiently connected to the bankruptcy case such that they are compensable within the parameters of § 329 and 330(a) and should thus be awarded priority treatment under § 503(b) and be subject to the expedited procedure of SC LBR 2016-1(b). While the fees may be compensable through payment directly from the Debtor or other sources, they are not entitled to be elevated to priority status and paid through the confirmed chapter 13 plan.[30]

### IT IS, THEREFORE, ORDERED:

1.     The fees for the Motion for Moratorium requested by the Statement of Supplemental Chapter 13 Attorney Fees After Confirmation are approved for disbursement in the amount of $400.00 pursuant to 11 U.S.C. § 330(a) under the procedure set forth in SC LBR 2016-1(b)(2), and may be paid pursuant to 11 U.S.C. § 503(b), subject to the terms of the confirmed plan and the Local Rules.

2.     Any additional amounts requested by the Statement of Supplemental Chapter 13 Attorney Fees After Confirmation do not meet the standards of SC LBR 2016-1(b)(2) and 11 U.S.C. § 330(a) and are denied administrative priority treatment under 11 U.S.C. § 503(b).

### AND IT IS SO ORDERED.

---

[30] As a result of the recent rule changes that went into effect on December 1, 2022, to the extent that fees are for services in connection to the bankruptcy case, thus warranting a review under the standards of 11 U.S.C. §§ 329 and 330, a debtor could still chose to pay those directly as opposed to have them paid through the plan; even in those instances, however, they would be subject to approval and disclosure by the Court through the procedures set forth in SC LBR 2016-1(b).